EDITHA H. CORBETT ET AL. V. JOHN C. FETZER.

FILED MARCH 3, 1896.  No. 6164.

1. **Parol Evidence:** NEGOTIABLE INSTRUMENTS: INDORSEMENTS.
   The words "without recourse," following the name of the
   first, and preceding the name of the second indorser of a
   bill or note, may be shown by parol evidence to apply to
   the former instead of the latter.

2. **Negotiable Instruments:** INDORSEMENTS: EVIDENCE. As
   against a subsequent *bona fide* holder, the liability created
   by the indorsement in blank of a bill or note cannot be
   varied by parol evidence; but, as between the original
   parties to such an indorsement, the terms of the contract
   is a proper subject of inquiry, and may be established by
   parol evidence. (*Holmes v. First Nat. Bank of Lincoln*, 38
   Neb., 326.)

3. ———: ———: ———.  Plaintiffs in error, on the evidence
   in the record, *held* not liable as indorsers.

ERROR from the district court of Douglas
county.  Tried below before IRVINE, J.

*B. G. Burbank,* for plaintiffs in error.

*J. J. O'Connor, contra.*

POST, C. J.

This was a proceeding by Fetzer, the defendant
in error, in the district court for Douglas county
to foreclose fifty-seven different mortgages exe-
cuted by William B. Cowles and wife to Editha H.
Corbett, upon certain property in North Side Ad-
dition to the city of Omaha, to secure payment of
as many notes of even date therewith, payable by
said Cowles to the order of the mortgagee named.
It is alleged in the petition that the said Editha
H. Corbett, Charles Corbett, Day & Cowles, and

R. W. Day, who were made defendants, indorsed said notes and thus became liable thereon. The prayer is for a foreclosure of the mortgages and for personal judgment against Day & Cowles, R. W. Day, and the Corbetts for any balance remaining due on their said indebtedness, after applying thereon the proceeds of the mortgaged property. Of the defendants named the Corbetts (husband and wife) only answered, admitting the allegations of the petition, except as to their personal liability, and charging that the notes above described were indorsed without recourse upon them. The reply is a general denial. The district court, upon the issues joined, found generally for the plaintiff, accompanied by a special finding that the Corbetts were liable as indorsers of said notes, and a decree was entered in accordance therewith, which has been removed into this court for review.

Practically the only question presented by the motion for a new trial and the petition in error relates to the liability of the Corbetts as indorsers of the notes above described. On the back and near the top of each of said notes appears the following: "E. H. Corbett. Chas. Corbett. Without recourse on us. Day & Cowles. R. W. Day." Said notes, according to the claim of the Corbetts, had been pledged to Samuel R. Johnson, bearing their indorsement in blank, as collateral security, and shortly before the consummation of the sale thereof to Fetzer the words immediately following their names, as shown above, were added in order to limit their liability thereon. The transaction which resulted in the purchase of the notes by Fetzer was conducted on the part of the Corbetts by R. W. Day, one of the defendants named,

who testified that the indorsements "Day &
Cowles" and "R. W. Day" were made during such
negotiations at the request of the plaintiff, and
that previous to such indorsement the words
"without recourse on us" were written thereon in
his presence by C. W. Johnson, a clerk in the office
of Mr. Corbett, and in which he is corroborated by
both Johnson and Corbett.    There are observable
from the record facts which tend strongly to sus-
tain the contention that the words of limitation
were intended to apply to the indorsement of the
Corbetts rather than to that of Day & Cowles or
R. W. Day.    They were in the first place written
with different ink, apparently at a different time,
and certainly in a different hand from that em-
ployed in the subsequent indorsements.    They
were also written by Corbett's clerk, by his order
and direction, pending the negotiations for the
sale of the notes and at a time when the question
of their liability upon paper of like character
would naturally be uppermost in the minds of
solvent indorsers, as the Corbetts are shown to
have been.    Johnson was asked on cross-examina-
tion why the words "without recourse" were not
written over the names of the indorsers, to which
he answered, in substance, that Mrs. Corbett's
name was written so near the upper margin of the
note as to leave no room therefor,—an explana-
tion which is shown by the record to be entirely
consistent with the facts.    Again, the claim that
the subsequent parties, instead of the Corbetts,
indorsed without qualification finds support in
the fact that both R. W. Day and the firm of Day
& Cowles were beneficially interested in the sale
of the notes, and the further fact that their abso-
lute liability thereon is established by the per-

sonal judgment entered against them in this case by default, as also by the admission under oath of Day, who testified in behalf of the defendants. On the part of the plaintiff below, Fetzer, it is shown that when the notes were first exhibited to him by Day, four or five days previous to the close of the transaction, they bore no indorsements aside from the names of the Corbetts, and that when next seen by him they were indorsed as now, except the name of Mr. Day, which was added in his, Fetzer's, presence at the time they were delivered to him. He testified also that he purchased the notes described, relying upon the indorsements of the Corbetts, paying therefor seventy-eight per cent of their face value, and that at the same time he purchased other notes executed by Cowles and indorsed by the Corbetts without recourse, at fifty-four per cent of the amount due thereon. He is also corroborated to some extent by his brother, William Fetzer, and Mr. Martin, who were present during the several interviews with Day. A final analysis of the evidence shows the following facts, as to which there is no substantial controversy: (1.) When the notes were first offered for sale to Fetzer they bore the blank indorsement of the Corbetts. (2.) Afterward, pending negotiations for the sale thereof, Charles Corbett, for the purpose of limiting the liability of himself and wife as indorsers of said notes, caused to be written thereon immediately below their names the words "without recourse on us." (3.) The names of the said Editha H. Corbett and Chas. Corbett were written so near the margin of said notes and each of them as to leave no room for the words quoted above their names. (4.) R. W. Day, one of the subsequent indorsers,

has expressly admitted his liability on said notes, and the absolute liability of the firm of Day & Cowles thereon is established by the decree in this case entered by default. (5.) That said notes, when finally purchased by Fetzer, bore all the indorsements now appearing thereon, except the name of R. W. Day, and were at said time indorsed by said Day at his, Fetzer's, request. (6.) Fetzer purchased said notes, paying therefor seventy-eight per cent of their face value, relying upon the indorsement of the Corbetts, who were then solvent.

The remaining questions merely involve the application of the law to the facts above stated. A case in point is *President of Fitchburg Bank v. Greenwood*, 84 Mass., 434. Upon the back of the note produced at the trial of that case there appeared in three successive lines the following indorsements: "Greenwood & Nichols—without recourse—Asa Perley, 2d." Parol evidence was offered by Greenwood & Nichols tending to prove that the words "without recourse" were written by them for the purpose of limiting their liability as indorsers and rejected in the absence of an offer to prove notice by the plaintiff, a remote indorsee and alleged *bona fide* holder. In reversing the judgment of the lower court Bigelow, C. J., said: "There is no rule of law which requires a party to limit or qualify his indorsement by any writing preceding his signature. Such qualification may and often does follow the name of the party. Text-writers of approved authority recognize this mode of limiting the liability of an indorser as regular and appropriate." The doctrine of that case is sustained by the following authorities therein cited: Chitty, Bills (10th Am. ed.),

22

234, 235; Story, Promissory Notes, sec. 138 and note; and in 2 Randolph, Commercial Paper, sec. 720, we observe it is approved in the following emphatic language: "The words 'without recourse,' following the name of an indorser, A, and preceding the name of indorser B, may be shown by A to apply to his indorsement, even against a *bona fide* holder who supposed it to apply to B's." It may be, as intimated, that there existed a purpose, shared by Day and Corbett, to deceive the plaintiff by inducing him to purchase the notes in the belief that the Corbetts were liable thereon. Such a contention has, however, no foundation either in the pleadings or the proofs, which show that he, Fetzer, throughout the entire transaction, relied upon his own judgment respecting the value of the paper in question; nor is there any force in the objection that the evidence explanatory of the indorsement of the notes by the Corbetts tends to change or vary their written obligation. As bearing upon that question we quote further from the opinion above cited: "It [the evidence offered] had no tendency to vary or control the written contract, or to change the legal effect of the indorsement. It only proved what the contract really was, at the time it was entered into by the defendants. * * * The attempt in this case is not merely to hold the defendants on a contract according to its meaning and legal effect, but to fasten on them a contract into which they never entered. If the plaintiffs mistook the application of the words which were written for the purpose of qualifying the indorsement of the defendants on the note, this fact furnishes no ground for enlarging or changing their liability on the contract

Barsby v. Warren.

into which they in fact entered." It will be re-
membered, too, that this cause presents no ques-
tion of fraud or estoppel, nor is the action one
between the indorser and a *bona fide* holder of
commercial paper, but between the parties to the
contract of indorsement, and, therefore, within
the rule recognized in *Holmes v. First Nat. Bank
of Lincoln*, 38 Neb., 326. It was held in the case
last cited that, as against a subsequent *bona fide*
holder, the liability created by the indorsement
in blank of a bill or note cannot be varied by parol
evidence; but that, as between the original par-
ties thereto, the precise terms of such contract
is always a subject of inquiry, and that parol
evidence is admissible for that purpose. The con-
clusion we reach is that the provision of the
decree of the district court for a deficiency judg-
ment against Corbett and wife is unsupported by
the evidence, for which it should be reversed and
the cause dismissed as to the plaintiffs in error.

REVERSED.

IRVINE, C., not sitting.